ERIC A. NYBERG, ESQ. (Bar No. 131105)
CHRIS D. KUHNER, ESQ. (Bar No. 173291)
**KORNFIELD, NYBERG, BENDES & KUHNER, P.C.**
1970 Broadway, Suite 225
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669
Email: e.nyberg@ kornfieldlaw.com
Email: c.kuhner@kornfieldlaw.com

Proposed Attorneys for Debtor Sirius Information, Inc., dba Infocom Group
and Bulldog Reporter

## UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 14-44504 RLE |
| SIRIUS INFORMATION, INC., dba INFOCOM GROUP and BULLDOG REPORTER | Chapter 11 |
| | **MOTION BY DEBTOR TO SELL SUBSTANTIALLY ALL OF ITS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND ASSUME AND ASSIGN EXECUTORY CONTRACTS, AND FOR RELATED RELIEF** |
| Debtor. | |

Date: December 17, 2014
Time: 2:00 p.m.
Ctrm: 201
U.S. Bankruptcy Court
1300 Clay Street
Oakland, California

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

Case: 14-44504   Doc# 7   Filed: 11/13/14   Entered: 11/13/14 17:08:32   Page 1 of 21

# TABLE OF CONTENTS

I. SUMMARY OF RELIEF .................................................................................................. 1

II. FACTUAL BACKGROUND ......................................................................................... 2

    A. Debtor's Background .............................................................................................. 2

    B. Pre-Filing Sale of Assets ........................................................................................ 6

    C. Conditional Agreement with the Debtor's Principal ............................................. 7

III. PROPOSED SALE TO BUYER .................................................................................. 7

    A. Summary of Proposed Sale (Assets to be Sold) .................................................... 7

    B. Purchase Price to be Paid or the Assets ................................................................. 8

    C. Additional Terms for the Sale Transaction ............................................................ 8

IV. LEGAL ARGUMENT .................................................................................................. 9

    A. The Proposed Sale Should Be Approved As a Fair, Reasonable and in the Best Interests of the Estate ...................................................................................................... 9

        1. There is a Valid Business Justification and Good Business Reasoning to Support the Sale 10

        2. The Facts Pertaining to the Sale Amply Justify and Substantiate the Debtor's Business Judgment and the Proposed Sale is In the Best Interest of the Estate ...................................................................................................... 10

    B. The Proposed Sale is in Good Faith and Thus the Buyer Should be Afforded the Protection Under 11 U.S.C. § 363(m) ................................................................................. 11

    C. The Purchase Price is Fair and Reasonable ........................................................... 12

    D. The Proposed Sale Satisfies the Requirements of Bankruptcy Code § 363 (f) For the Sale of the Estate's Assets Free and Clear of Encumbrances .......................................... 13

    E. Accurate and Reasonable Notice Has Been Provided ............................................ 13

    F. Waiver of Federal Bankruptcy Procedure 6004(g) is Appropriate in this Case ...... 14

    G. The Debtor Should be Allowed to Assume the Executory Contracts ..................... 14

    H. Absent a Timely Objection to the Debtor's Cure Amounts, the Court Should Make a Finding that the Cure Amounts are Correct and That Upon Payment of Said Amounts, Any Defaults Under the Executory Contracts Will be Deemed Cured ............................................. 14

    I. The Debtor Should be Authorized to Assign the Assumed Contract ....................... 14

V. CONCLUSION .............................................................................................................. 17

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

Motion to Sell All of Its Assets Free and Clear of Liens, Claims, Encumbrances and Interests and Assume and Assign Executory Contracts, and for Related Relief

-i-

Case: 14-44504   Doc# 7   Filed: 11/13/14   Entered: 11/13/14 17:08:32   Page 2 of 21

# TABLE OF AUTHORITIES

## Cases

240 *North Brand Partners, Ltd. v. Colony G.F.P. Partners, L.P.,* 200 B.R. 653 (9th Cir. BAP 1996).................................................................................................................9

*Arnold and Baker Farms v. U.S.* 85 F.3rd 1415 (9th Cir. 1996) ...........................................13

*Community Thrift and Loan v. Suchy (In Re Suchy),* 786 F 2d. 900 (9th Cir. 1985)..............11

*In Re Abbots Dairies, Inc.* 788 F2d. 143 (3rd Cir. 1986) ..............................................9,11-12

*In Re Apex Oil Co.,* 92 B.R. 847 (Bankr. E.D. Mo. 1988) ....................................................11

*In Re Curlew Valley Assocs.,* 14 B.R. 506 (Bankr.P. Utah 1981) ........................................10

*In Re Gulf States Steel Inc.,* 285 B.R. 497 (Bankr.N.D. Ala 2002) ..................................11,13

*In re Lafayette Radio Electronics* (BC ED NY 1981) 9 B.R. 993 .........................................16

*In Re Lionel Corp.,* 722 F 2d. 1063 (2nd Cir.1986)...............................................................10

*In Re M Capital Corp.* 290 B.R. 743 (9th Cir. BAP 2003) .....................................................11

*In Re Quintex Entertainment, Inc.,* 950 F. 2nd (9th Cir. 1991) ...............................................9

*In re R.B.B., Inc.* (9th Cir. 2000) 211 F.3d 475. .....................................................................16

*In re Sapolin Paints, Inc.* (BC ED NY 1980) 5 B.R. 412 .......................................................16

*In Re Southern Biotech, Inc.,* 37 B.R. 318 (Bankr.P.Fla.1983) ..............................................10

*In re Windmill Farms, Inc.* (9th Cir. 1988) 841 F.2d 1467......................................................15

*Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines, Inc. (In Re Continental Airlines, Inc.),* 780 F.2d 1226 (5th Cir. 1986) ....................................................................10

*Matter of UL Radio Corp.,* 19 B.R. 537 (Bankr. S.D.N.Y. 1982)..........................................16

*Travelers Insurance Co., v. Plaza Family Partnership (In re Plaza Family Partnership),* 95 B.R. 166 (Bankr. E.D.Cal.1989)...................................................................................................9

*Walters v. Sunwest Bank (In Re Walters),* 83 B.R. 14 (9th Cir. BAP 1988) ..........................10, 11

## Statutes

11 U.S.C. § 363(b) .............................................................................................................1, 9, 10

11 U.S.C. § 363(f) .............................................................................................................1, 13, 16

11 U.S.C. § 363 (m) .......................................................................................................11,12, 16

11 U.S.C. § 365....................................................................................................................1,14

11 U.S.C. § 365(b) (1) (a) ..........................................................................................................13

11 U.S.C. § 365(b) (1) (b) ..........................................................................................................14

11 U.S.C. § 365(b) (1) (c) ..........................................................................................................14

11 U.S.C. § 365(d) (4) ...............................................................................................................14

11 U.S.C. § 365(f) (2) (a) ...........................................................................................................16

11 U.S.C. § 365(f).......................................................................................................................15

11 U.S.C. § 500............................................................................................................................7

11 U.S.C. § 542............................................................................................................................7

11 U.S.C. § 544............................................................................................................................7

11  U.S.C. § 545...........................................................................................................................7

11 U.S.C. § 547............................................................................................................................7

11 U.S.C. § 548............................................................................................................................7

11 U.S.C. § 549............................................................................................................................7

11 U.S.C.§ 551.............................................................................................................................7

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

-ii-

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

11 U.S.C. § 553(b) ................................................................................7
11 U.S.C. § 724(a) ................................................................................7
11 U.S.C. § 1107 ..................................................................................1
11 U.S.C. § 1108 ..................................................................................1

**Rules**
Federal Rule of Bankruptcy Procedure 6004 ...........................................9
Federal Rule of Bankruptcy Procedure 6004(f) (1) ..................................9
Federal Rule of Bankruptcy Procedure 6004(g) ..............................9,14, 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Kornfield, Nyberg, Bendes & Kuhner, P.C.**
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

-iii-

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

TO:    WELLS FARGO BANK, ITS ATTORNEYS OF RECORD, AND ALL CREDITORS AND PARTIES IN INTEREST:

AFFECTED LIENHOLDER: WELLS FARGO BANK

AFFECTED PARTIES TO EXECUTORY CONTRACTS: LEXISNEXIS, A DIVISION OF REED ELSEVIER, INC.; PR NEWSWIRE ASSOCIATION, LLC; NASDAQ OMX CORPORATE SOLUTIONS, INC.; FACTIVA, INC.; AND INFOCOM GROUP

Sirius Information, Inc., dba Infocom Group and Bulldog Reporter, the Debtor and Debtor-in-Possession in the above-referenced case (the "Debtor" and/or "Sirius"), hereby submits this motion for an order approving: (1) the sale of substantially all of the Debtor's assets free and clear of liens, claims, encumbrances and interests; (2) the assumption and assignment of executory contracts; and (3) for related relief ("Motion").

## I.    <u>SUMMARY OF RELIEF</u>

The Debtor hereby moves for an order authorizing the Debtor to sell substantially all of its assets to 19882014 LLC (the "Buyer") pursuant to 11 U.S.C. § 363(b) <u>and</u> (f) and to assume and assign executory contracts pursuant to 11 U.S.C. § 365 on the terms and conditions set forth in the Asset Purchase Agreement dated as of November 6, 2014 by and between the Buyer and the Debtor (the "APA"), a copy of which is attached as <u>Exhibit A</u> to the Declaration of James Sinkinson filed in support of this Motion. The Debtor will pay its only secured creditor, Wells Fargo Bank, in full (approximately $16,142) from the proceeds of the sale. As part of the sale, the Debtor also seeks approval to assume and assign the executory contracts of LexisNexis License, a division of Reed Elsevier Inc., PR Newswire Association LLC, NASDAQ OMX Corporate Solutions, Inc., and Factiva, Inc.

The Motion by the Debtor is based upon this Motion, the Notice of Motion, the Declarations of James Sinkinson, Martin Lyster and Chris D. Kuhner filed herewith and all papers and pleadings on file herein, and such evidence, testimony and arguments as may be presented at the time of the hearing.

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

-1-

Case: 14-44504   Doc# 7   Filed: 11/13/14   Entered: 11/13/14 17:08:32   Page 5 of 21

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

## II.    FACTUAL BACKGROUND

### A.  Debtor's Background

On November 10, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code and is presently operating its business as debtor-in-possession pursuant to the provisions of Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a periodical publisher and provider of specialized content to the public relations and corporate communications industry. The focus of this information has been to assist professionals in this industry perform their jobs more successfully.

The Debtor was created in 1979, publishing clinical medicine journals and acquired the Bulldog Reporter (print) newsletter in 1987.  Since that time the Bulldog Reporter brand has propagated a wide range of products and services, including subscription based products and services. Until Sirius ceased operations on September 30, 2014, the company's product line included a daily online newsletter, two online media directories, a series of 70 webinars annually, several live conferences, a series of industry awards programs, and various books and media lists. In addition, until about August 31, 2014 the Debtor produced a controlled-circulation (no subscription fee) daily online trade journal, which served as a marketing vehicle for the Debtor's products and carried occasional outside advertising).

As of August 31, 2014 Sirius produced the following products and services under the Bulldog Reporter brand:

1. PR University webinars (70 ninety-minute and 240-minute events);

2. Bulldog Awards (eight different programs);

3. Ancillary Products (books and media contact lists)

4. Media Pro online media directory (subscription-based software service);

5. List Builder online media director (transactional-based software service);

6. Inside Health Media (daily subscription e-newsletter);

7. Conferences (PR Agency Growth & Profit Seminar);

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

-2-

8. Daily 'Dog (daily online trade journal)

The Debtor's financial performance over the past several years has faltered. On a cash basis, it generated the following revenue and net losses (cash basis)

|  | Sales | Net Profit |
|---|---|---|
| 2012 | $1,555,833 | ($32,984) |
| 2013 | $1,484,706 | ($79,176) |
| 2014 (8/31) | $945,702 | ($128,615) |

By the end of August, almost 35 years from its founding, the Debtor's bank and private loan payments (unsecured), vendor debt service and payroll obligations had overwhelmed cash flow, and the Debtor was forced to lay off almost all its staff (except for several retained to assist in winding down its affairs) and closed its doors and ceased operations.

At the beginning of October, the Debtor brought in in a turnaround specialist to explore the possibility of re-starting the company, but this expert ascertained that a minimum $50,000 immediate infusion of cash would be necessary to even begin the process of searching for additional financing to fund a turnaround. Since the Debtor had exhausted all its sources of borrowing, this option was not viable.

A few weeks later, while in the process of closing down its offices, engaging a bankruptcy attorney, notifying vendors, and reaching out to potential buyers in the industry the Debtor was contacted by two firms, the Buyer and Lawrence Ragan Communications, Inc. ("Ragan"). Each of parties expressed some level of interest in potentially purchasing the Debtor's assets. At this time the Debtor's executives were not being paid and were urgently in the process of seeking other employment, while also valiantly trying to sell the Debtor's furniture and equipment and clean 35 years of accumulated records out of its offices. The Debtor was planning to file a Chapter 7 bankruptcy and any ongoing value of the company would be lost.

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

-3-

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

At this time, Ragan one of Sirius Information's fiercest competitors expressed an interest in acquiring unspecified Bulldog Reporter assets. The two companies promptly executed a non-disclosure agreement, and Sirius offered to provide whatever information was necessary for Ragan to perform due diligence. Sirius sent to Ragan a Debtor overview, including top-line product-by-product financial information. Sirius warned Ragan that any purchase would have to be accomplished expeditiously for two reasons: 1) Sirius was on the verge of filing for bankruptcy, and 2) every day that passed without Bulldog Reporter customers receiving access to their subscription products or hearing about the awards programs they had entered increased customer discontent and substantially decrease the value of the products of the Debtor. Despite promises to get back in touch with specific information requests and despite Sirius executives reaching out to the Ragan executive in charge, Ragan failed to timely respond. Approximately two weeks ago, Ragan briefly re-engaged with the Debtor. During this re-engagement the Debtor continued to have serious concerns about being able to close a deal with Ragan due to Ragan's prior failure to follow-up on due diligence, the late re-engagement and general concern about the ability to close a deal. Specifically, the Debtor understands that Ragan's possible acquisition is going to be financed, something the deal with the Buyer does not require. In fact, the Debtor's concern of the viability and credibility of any potential transaction with Ragan have come to fruition since Ragan has not been in substantive contact since the brief re-engagement with the Debtor and appears to no longer be interested in acquiring the assets subject to this sale. This is not surprising since previous discussion did not move forward due to the lack of communication from Ragan.

At about the same time Debtor made contact with Ragan, it was also approached by the Buyer, who is a wholly owned subsidiary of an extremely successful Canadian-based company in the media intelligence industry, which expressed interest in acquiring the Bulldog Reporter products. While the executive team at Sirius was unfamiliar with the Buyer and its owner, this

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

-4-

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

new suitor seemed appreciative of the fact the Sirius's bankruptcy filing was imminent and that the value of the Sirius assets was declining rapidly and dramatically. The Buyer immediately mounted an aggressive effort to gather information about Sirius Information and the Bulldog Reporter product line. Several Sirius executives, working with no pay, no office and only partially salvaged company information, put new career efforts on hold in order to facilitate Buyer's due diligence process.

The process of familiarizing the Buyer with the Bulldog Reporter products, performance and customers, including subscription based products and customers began on October 14, 2014 The Buyer made an offer to Sirius for most of its Bulldog Reporter products on October 28, which Sirius accepted on November 7, 2014. The Buyer made it very clear that it only was interested in purchasing the assets as a going concern and through a Chapter 11 proceeding with a sale under 11 U.S.C. § 363.

Sirius executives believe that had the Buyer not made its approach and subsequent offer as quickly as it did, the Bulldog Reporter customer-relationships and products would fail imminently and the value of the business, much of which is derived from the subscription based services, would be lost. As of this filing, customers have been without the products they have purchased for over 30 days. They also have had no word of the fate of the Bulldog Reporter brand. Even at this date, it will be a serious business challenge to re-establish those relationships and resuscitate those products. The Debtor believes an expedient sale of its assets to Buyer as a going concern (or as close as possible to a going concern) on the terms set forth in the APA, which provides for a quick cash closing, is the best (and only) chance to ensure the value of the estate and the Debtor's good will is maximized and preserved for the benefit the estate and its creditors.

The Debtor, mindful of the fact that it has general unsecured creditor claims in the approximate amount of $834,838, plus priority wage claims of approximately $50,480, a priority

Motion to Sell All of Its Assets Free and Clear of Liens, Claims, Encumbrances and Interests and Assume and Assign Executory Contracts, and for Related Relief

-5-

Case: 14-44504    Doc# 7    Filed: 11/13/14    Entered: 11/13/14 17:08:32    Page 9 of 21

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

tax claim of $3,000, as well as the secured claim in favor of Wells Fargo Bank in the approximate amount of $16,142. With the understanding that, at a minimum, the Debtor would have to pay the Wells Fargo Bank lien and make some distribution to unsecured creditors (including priority wage claimants), the Debtor, through Mr. Sinkinson, negotiated the APA, which the Debtor believes is in the best interests of the estate and its creditors.

## B.  Pre-Filing Sale of Assets

Since the Debtor did not have any operating capital to pay its debts, let alone finance a Chapter 11 case, the Debtor, prior to the filing of bankruptcy, sold to the Buyer certain customer lists and related intellectual property for $15,000.

The Debtor hopes that by filing a Chapter 11 and obtaining an approval of the sale in a timely fashion, a liquidating  plan may be filed and approved to allow payment to creditors be made within six (6) months or sooner of the filing of the bankruptcy case. The Debtor contemplated filing a Chapter 7 bankruptcy, however, believed that such a course would not provide the greatest return to creditors. However, a Chapter 11 bankruptcy retains the value of the Debtor and both the Buyer and the Debtor believe that getting creditors paid in a quicker and timely matter, bring value to the transaction that would otherwise be lost in a Chapter 7 bankruptcy.  Furthermore, the potential delay and uncertainty of a Chapter 7 bankruptcy also militated towards filing a Chapter 11 bankruptcy. If the Debtor filed a Chapter 7, the Debtor would be forced to cease all operations. It would lose its executory contracts and its customers would flee to competitors. The value of the Debtor's assets in that scenario would be a fraction of the amount being paid by the Buyer. Under the sale to the Buyer, after paying off the Secured Creditor Wells Fargo, the Debtor will have approximately $115,000 for distribution to unsecured creditors. The Debtor estimates that the value of its assets as a Chapter 7 case would be a fraction of what the Debtor will receive from the Buyer.

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

-6-

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

Having been in business for almost 35 years, the Debtor submits that it is in the best position to assess the value of its assets, and preserve and maximize their value for all interested parties, and in its view, selling the assets to Buyer is the best way to proceed.

### C.  Conditional Agreement with the Debtor's Principal

The Buyer and Mr. Sinkinson have entered into a consultation agreement whereby Mr. Sinkinson will act as a consultant and be paid $3,000 per month for a period of twelve (12) months.  Mr. Sinkinson was the CEO of Debtor's business and the brain behind developing and marketing the assets of the Debtor that the Buyer desires to purchase. The Buyer came to the conclusion that continuing the involvement of Mr. Sinkinson should the sale be approved is critical to a smooth transition and to continuing the assets as a going concern. This consulting agreement is therefore conditioned on the approval of this sale.

Given the Debtor's current financial situation and the estimated liquidation value of its assets if the Debtor were forced to liquidate its assets, the Debtor believes that the sale to the Buyer pursuant to the terms of the APA is in the best interest of the estate and creditors. Without the sale to the Buyer, the Debtor would be forced to shut down and liquidate its assets which will result in a lower return to unsecured creditors, if at all.

### III.  PROPOSED SALE TO BUYER

#### A.  Summary of Proposed Sale (Assets to be Sold)

The assets to be sold consist of substantially all of the assets of the Debtor. A complete description of the assets being purchased is set forth in Schedule 1.1.4 of the APA. The sale does not include a sale of any claims for relief arising under 11 U.S.C. Sections 542, 544, 545, 547, 548, 549, 500, 551, 553(b), or 724(a) of the Bankruptcy code. These claims are often referred to as "avoidance claims."

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

-7-

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

### B. Purchase Price to Be Paid or the Assets

The consideration for the assets being purchased is $135,000, plus any cure amounts associated with the Assumed Contracts, as more fully set forth in the APA (the "Purchase Price").

It is contemplated by the parties that the cash component of the Purchase Price will be deposited in a business escrow account of the Debtor's attorney's trust account and from said account, it will be transferred to a DIP Account in the name of the Debtor at closing. The Debtor will then make specified payments from the DIP Sale Account on items identified in the APA and pursuant to a Court order approving the sale. The balance of the proceeds will be held in the DIP account and not distributed absent a confirmed plan or order from the court.

### C. Additional Terms of the Sales Transaction

The sale of the assets to the Buyer shall be free and clear of liens, claims, encumbrances and interests to the full extent permitted by law. The lien of Wells Fargo Bank in the estimated amount of $16,142 will be paid in full from the proceeds of the sale.

The sale is contingent upon Bankruptcy Court approval and also contingent upon the Bankruptcy Court entering an order granting the assumption and assignment of the Assumed Contracts set forth in the APA. Any cure amounts associated with the assumption and assignment of Assumed Contracts shall be paid by the Buyer, subject to and as more fully set forth in the APA. The list of Assumed Contracts and proposed cure amounts is set forth in Schedule 1.1.4 to the APA, which is attached as Exhibit A to the Declaration of James Sinkinson filed herewith

There are no broker's fees or commissions to be paid by the Debtor as a result of the sale of its assets to the Buyer and both the Debtor and the Buyer will bear their own expense incurred in connection with the negotiation and execution of the APA.

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

-8-

Case: 14-44504   Doc# 7   Filed: 11/13/14   Entered: 11/13/14 17:08:32   Page 12 of
21

# IV.  LEGAL ARGUMENT

### A.  The Proposed Sale Should Be Approved As Fair, Reasonable and in the Best Interests of the Estate.

Bankruptcy Code § 363(b) and Federal Rule of Bankruptcy Procedure 6004 permit a Debtor to sell assets of the estate outside of its ordinary course of business, after notice and a hearing. See, e.g., *In Re Quintex Entertainment, Inc*., 950 F. 2nd 1492, 1495 (9th Cir. 1991). In accordance with Federal Rule of Bankruptcy Procedure 6004, sales of property outside the ordinary course of business may be by private sale or by public auction. See Fed.R. Bankr.P. 6004(f) (1). Due to the pre and post-petition marketing of the Debtor's assets as set forth above, and due to the requirement by the Buyer that the sale not be subject to overbids due to potential delays that could be associated with overbids and potential bidders' requests for time to conduct due diligence, the Debtor is requesting permission with this Motion to consummate a sale of its assets directly to Buyer without an auction on the terms set forth in the APA. The Debtor also submits there is nothing in the Bankruptcy Code or Rules that requires overbids. Debtor is also requesting permission to consummate a sale of its assets directly to Buyer without an auction because the APA with Buyer requires that this sale be conducted in a timely manner or Buyer has the right to terminate the APA.  Buyer believes that the value of the assets diminishes each day Debtor's customers are not being serviced, which is currently the case.

Although § 363(b) does not provide an express standard for determining whether the court should approve a particular proposed sale, courts have examined: (i) whether the proposed transaction has a valid business justification of good business reasoning, (ii) whether the sale is a result of good faith negotiations, and (iii) whether the proposed purchase price is fair and reasonable. See e.g., 240 *North Brand Partners, Ltd. v. Colony G.F.P. Partners, L.P., (In re 240 North Brand Partners, Ltd.)*, 200 B.R. 653, 659 (9th Cir. BAP 1996); *In re Abbots Dairies, Inc.* 788 F2d. 143 (3rd Cir. 1986); *Travelers Insurance Co., v. Plaza Family Partnership (In re Plaza Family Partnership)*, 95 B.R. 166 (Bankr. E.D.Cal.1989). All three of these factors are satisfied in the present case.

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

Motion to Sell All of Its Assets Free and Clear of Liens, Claims, Encumbrances and Interests and Assume and Assign Executory Contracts, and for Related Relief

-9-

### 1. There is a Valid Business Justification and Good Business Reasoning to Support the Sale.

The Ninth Circuit Bankruptcy Appellate Panel in *Walters v. Sunwest Bank (In Re Walters)*, 83 B.R. 14, 15, 16, (9th Cir. BAP 1988) applied a flexible, case-by-case test to determine whether a sound business purpose justifies a proposed sale under § 363(b), adopting the reasoning of the Fifth Circuit in *Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines, Inc. (In Re Continental Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) and the Second Circuit *In Re Lionel Corp.*, 722 F 2d. 1063, 1071 (2nd Cir.1986). The panel noted that whether a proffered justification is sufficient will depend upon the specifics of the case. The court should consider all salient factors pertaining to the case and enact further the diverse interests of the debtor, and the creditors alike. Id.

### 2. The Facts Pertaining to the Sale Amply Justify and Substantiate the Debtor's Business Judgment and the Proposed Sale Is In the Best Interest of the Estate.

As supported by the Declaration of Mr. Sinkinson, the Debtor explored strategic alternatives to save the Debtor and maximize returns to creditors, including consulting a turnaround expert and obtaining additional funding, and selling the business prior to shutting down. The Debtor extensively explored finding capital partners or any other source of capital to restructure its business. After its extensive efforts to find a solution to restructuring, Debtor concluded that it is not feasible for it to restructure its business and it was unable to find capital partners willing to invest into the Debtor, and as such, a sale is the only viable option available to the Debtor to facilitate any return to its creditors. The Buyer has presented the Debtor with an offer which, in the Debtor's business judgment, provides the best chance of a return to the unsecured creditors. The return which the Debtor estimates from the sale is far greater than any return which would be achieved through the shutdown of the Debtor's business and liquidation of its remaining assets.

The Courts have long recognized that where a sale by a Debtor is made in good faith and upon a reasonable basis-as the proposed sale is here- "[T]he court will not entertain objections to the conduct of the estate]" *In Re Curlew Valley Assocs.*, 14 B.R. 506, 513-514 (Bankr.P. Utah 1981). See also *In Re Southern Biotech, Inc.*, 37 B.R. 318, 322-323 (Bankr.P.Fla.1983). This is

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief
-10-

Case: 14-44504    Doc# 7    Filed: 11/13/14    Entered: 11/13/14 17:08:32    Page 14 of 21

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

because it is the "(T)rustee not the court, [that] is selling [the] property.)" *In Re Gulf States Steel Inc.*, 285 B.R. 497,516 (Bankr.N.D. Ala 2002). In accordance with *In Re Walters*, Id. and the foregoing cases, the Debtor submits that there is a valid business justification and good business reasoning for the proposed sale to the Buyer on the terms contained in the APA and without the necessity of overbids, which could result in the Buyer walking from the deal, which could be disastrous to the estate and its creditors. The Court should approve the sale and allow it to move forward expeditiously in the interests of the estate and all stakeholders.

    **B.**    **The Proposed Sale is in Good Faith and Thus the Buyer Should be Afforded the Protection Under 11 U.S.C. § 363(m).**

Section 363(m) of the Bankruptcy Code provides:

> "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

Although the Bankruptcy Code does not define the "good faith," courts have found that the good faith requirement focuses principally on the disclosurable material sale terms in the absence of a fraud or collusion between bidders. See, e.g. *In re Abbots Dairies,* supra, see also *In Re Apex Oil Co.*, 92 B.R. 847,869-71 (Bankr. E.D. Mo. 1988). It is typically only in "fraud, collusion between the purchaser and other bidders or the Trustee, or any attempt to take grossly unfair advantage of other bidders" that leads to a determination that there is a lack of good faith in a sale proceeding. *In Re M Capital Corp.* 290 B.R. 743,748 n3 (9th Cir. BAP 2003). (Quoting *Community Thrift and Loan v. Suchy (In Re Suchy)*, 786 F 2d. 900, 902 (9th Cir. 1985).

While the Ninth Circuit does not require a finding of good faith be made by the Bankruptcy Court at the time of the sale, it is clear under the circumstances of this case that the Debtor's sale of its assets to the Buyer was negotiated and is proposed in good faith. As is supported by the Declaration of James Sinkinson and the Declaration of Martin Lyster, the Debtor and Buyer have at all times acted in good faith. The APA was negotiated by the Debtor and Buyer

Motion to Sell All of Its Assets Free and Clear of Liens, Claims, Encumbrances and Interests and Assume and Assign Executory Contracts, and for Related Relief

-11-

Case: 14-44504   Doc# 7   Filed: 11/13/14   Entered: 11/13/14 17:08:32   Page 15 of 21

at arm's-length with both parties represented by counsel, and there has been no collusion between the Buyer and any other party relating to the proposed sale or otherwise. The APA represents the best, possibly the only, and the most viable deal available to the estate at this time. Finally, full disclosure of the terms of the proposed sale have been provided to creditors pursuant to this Motion and the Notice of hearing of sale.

Based on the foregoing, Buyer should be deemed a good faith purchaser within the meaning of § 363(m) of the Bankruptcy Code.

### C.    The Purchase Price is Fair and Reasonable.

Although an auction sale is generally considered to establish sufficient value for assets being sold, See, e.g. *In re Abbots Dairies,* supra, private sales are permitted by the Bankruptcy Code. In this regard, the Debtor's pre-petition efforts to find either capital partners or purchasers demonstrate that the proposed sale is for a fair and reasonable price. The Buyer is the only entity that has stepped up with a viable, bona fide offer to purchase the Debtor's assets and is purchasing them for a price that is multiples greater than the value that would be achieved in a Chapter 7 liquidation.

Debtor believes that the proposed sale will result in the highest purchase price for the assets being sold. Debtor believes that the liquidation value of its assets are only a fraction of the consideration being paid by the Buyer. It is critical to emphasize the context of this sale, as time goes on (weeks, not months), the customers are not being serviced and thus the assets are diminishing in value. Although it is difficult to set an "appraised" value of the assets, the price being paid is fair and reasonable considering (1) the Debtor's efforts within the industry and potential buyers to find a potential purchaser(s) and the and subsequent feedback (or lack thereof) from the market; (2) the requirement that the assets be sold and transferred quickly thus necessitating an aggressive due diligence and sale negotiation process which this Buyer performed; and (3) the lack of viable restructuring alternatives available to the Debtor which limits the Debtor's options outside of liquidation. Furthermore, due to the limited resources of the Debtor at this time, such as the limited personnel of Debtor to provide assistance in due diligence efforts, initiating due diligence efforts with a new potential bidder will inevitably be extremely

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

Motion to Sell All of Its Assets Free and Clear of Liens, Claims, Encumbrances and Interests and Assume and Assign Executory Contracts, and for Related Relief

-12-

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

time-consuming, difficult and cause significant delays. These delays will invariably decrease of the value of the assets. The bottom line is the price is the highest and best offer the Debtor received and there is no indication that any viable offer will come in that will provide a greater return to the estate and its creditors. Just as the Ninth Circuit acknowledged, the precise value of purchased assets being sold will only be recognized at- and as a result of-the sale of the purchased assets. *Arnold and Baker Farms v. U.S.* 85 F.3rd 1415, 1421 (9th Cir. 1996). Put another way, the assets are worth what a willing buyer is willing to pay for them.

Finally, courts have recognized that a debtor is entitled to "great judicial deference in deciding which bid to accept as the best and highest bid." *Gulf States Steel*, supra, 285 B.R. 516. In this case, the Debtor is entitled to deference in determining not only the manner in which the assets are to be sold, but how the value of those assets is to be maximized. Based on the history and circumstances of these cases, the Debtor believes that the Buyer's offer satisfies the requirement that the price paid for the purchased assets to be fair and reasonable.

### D. The Proposed Sale Satisfies the Requirements of Bankruptcy Code § 363(f) For The Sale of The Estate's Assets Free and Clear of Encumbrances.

In the present case, the Debtor's assets are subject to a blanket security interest in favor of Wells Fargo Bank ("WFB"). As of the time of the anticipated sale, WFB will be owed approximately $16,142. The purchase price to be paid for the assets is far greater than the outstanding balance owed to WFB and therefore under 11 U.S.C. § 363(f) (3), the assets can be sold free and clear of the lien of Wells Fargo. As a practical matter, the Debtor will pay the entire outstanding obligation owed to WFB at the time of closing and will obtain a lien release from WFB.

### E. Accurate and Reasonable Notice Has Been Provided

The sale notice sets forth a summary of the proposed terms of the APA and directs individuals to Debtor's counsel for additional information. Accordingly, the Debtor has satisfied the requirements for accurate and reasonable notice.

///

///

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

-13-

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

**F.      Waiver of Federal Rule of Bankruptcy Procedure 6004(g) Is Appropriate in this Case.**

The Debtor requests that the stay imposed by F.R.B.P. 6004(g) upon orders authorizing the use and sale or lease of property be waived under the circumstances of this sale. For the reasons set forth above, it is in the interests of the Debtor's creditors and the estate that the sale closes as soon as possible in order to prevent the continuing decline of the value of the Debtor's assets and good will. The Debtor has served the sale notice on all of the known creditors, interest holders and other parties in interest as fully set forth in the certification of service to be submitted in connection with this Motion, and therefore, any persons having any objections to the Motion have been afforded a reasonable opportunity to voice any objections or concerns.

Debtor is requesting that the provisions of F.R.B.P.6004 (g) which would otherwise stay any order approving the sale as requested herein be waived to allow the sale to close as quickly as possible after the entry of the order approving the sale.

Accordingly, the Debtor is aware of no prejudice that will be caused by the Court's waiver of F.R.B.P. 6004(g), and said waiver is necessary in order to preserve the value of the Debtor's estate for the benefit of all creditors and stakeholders.

**G.      The Debtor Should Be Allowed to Assume and Assign the Executory Contracts.**

Assumption and assignment of an executory contract or unexpired lease in bankruptcy is subject to the Bankruptcy Court's approval pursuant to 11 U.S.C. § 365.  Several conditions must be met, all of which are or will be satisfied in this case.  The right to assume an executory contract or unexpired lease must be exercised within the statutory time limits set forth in 11 U.S.C. § 365(d) (4).  Any defaults which exist at the time of assumption, must be cured by the Debtor or the Debtor must provide adequate assurance of a prompt cure of the default, Debtor must also provide adequate assurance that the Debtor will compensate the other party to the contract for any actual pecuniary loss that the party suffered as a result of the default and the debtor must provide adequate assurance of future performance under the contract or lease.  See 11 U.S.C. § 365(b) (1) (a), (b) and (c).  Each of the aforementioned requirements must be met before the court may

Motion to Sell All of Its Assets Free and Clear of Liens,          -14-
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

Case: 14-44504   Doc# 7   Filed: 11/13/14   Entered: 11/13/14 17:08:32   Page 18 of 21

approve an assumption of an executory contract. See *In re Windmill Farms, Inc.* (9th Cir. 1988) 841 F.2d 1467, 1473.

As set forth in Schedule 1.1.4 of the APA, some of the executory contracts which the Debtor seeks to assume may have defaults which must be cured. Any defaults under the contracts to be assumed will be cured by way of full payment of any such default at the time of closing of the sales transactions between the Debtor and Buyer, or on terms as may otherwise be agreed upon in writing by the party to any executory contract. It is currently estimated that the sale will close on or before December 31, 2014 and the assumption and assignment of leases will coincide with and be a part of and conditioned upon said closing, as authorized by this Court's order approving the sale. Accordingly, there will be prompt cure of any default.

**H.     Absent a Timely Objection to the Debtor's Cure Amounts, the Court Should Make a Finding that the Cure Amounts are Correct and That Upon Payment of Said Amounts, Any Defaults under the Executory Contracts Will be Deemed Cured.**

Finally, as it is set forth in the Declaration of James Sinkinson in support of the Debtor's Motion, once the contracts are assumed by the Debtor, they will be assigned as part of the sales transaction between the Debtor and Buyer. The future performance due under the Assumed Contracts will be a performance that will be due by Buyer by way of the Debtor's assignment of the contracts to Buyer, subject to and as more fully set forth in the APA. As is demonstrated by the Declaration of Martin Lyster submitted in support of this Motion, Buyer is financially capable and otherwise ready, willing and able to timely perform all of its financial and other obligations under the Assumed Contracts as provided in the APA.

**I.     The Debtor Should Be Authorized to Assign the Assumed Contract.**

An executory contract that has been properly assumed by a debtor in a bankruptcy case may also be assigned by the debtor to a third party, subject to the giving of adequate assurance of future performance and except to the extent the contract is not assignable under the Bankruptcy Code. See 11 U.S.C. § 365(f).

In the present case, the Debtor asserts that each of the executory contracts are not subject to any of the anti-assignment provisions found in 11 U.S.C. § 365, or if they are the Buyer will

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

-15-

obtain necessary consent.

An executory contract may be assigned to a third party if the lease or contract has been properly assumed and adequate assurance of future performance by the assignees provided, regardless of whether there has been a default under the lease. See 11 U.S.C. § 365(f) (2) (a) and (b); Matter of *U.L. Radio Corp.,* (BC SD NY 1982) 19 B.R. 537.

What constitutes "adequate assurance" for assignment purposes lies within the Bankruptcy Court's discretion, determined on a case by case basis. See *In re Sapolin Paints, Inc.* (BC ED NY 1980) 5 B.R. 412, 420-421; Matter of *U.L. Radio Corp., supra,* 19 B.R. at 542; *In re Lafayette Radio Electronics* (BC ED NY 1981) 9 B.R. 993, 998.

Additionally, "adequate assurance of future performance" by the assignee usually depends on the assignee's financial condition and its ability to comply with the debtor's financial obligations under the agreement. *In re R.B.B., Inc.* (9th Cir. 2000) 211 F.3d 475, 477.

In the present case, assuming the court grants the Debtor's motion authorizing it to assume its executory contract, the first prerequisite to the Debtor's ability to assign the executory contract to Buyer will be satisfied. As is set forth above in the discussion of the Debtor's right to assume the executory contract, and is demonstrated by the Declaration of Martin Lyster in support of this Motion, Buyer is financially capable and otherwise ready, willing and able to timely perform all of its financial and other obligations under the Assumed Contracts as provided in the APA, the Buyer is a wholly owned subsidiary of an extremely successful Canadian-based company in the media intelligence industry and therefore is more than financially able to perform under the contracts.

Accordingly, the Debtor respectfully asserts that the court should enter an order authorizing it to not only assume the executory contracts, but to also assign them to Buyer as part of the sale of its assets to Buyer.

///

///

///

///

///

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests and Assume and
Assign Executory Contracts, and for Related Relief

-16-

# V.  **CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that the Court enter the proposed order submitted herewith:

1.     Approving the Motion and authorizing the Debtor to consummate and carry out the transactions described in the APA to complete the sale of substantially all of its assets to Buyer as set forth in the Motion and APA, and approve the terms and conditions of the APA;

2.     Under 11 U.S.C. § 363(f) and without further order of the Court, approving the sale of the purchased assets to Buyer free and clear of all liens, and any such encumbrances securing claims not paid prior to or concurrently with the closing attaching to the portion of the Debtor's proceeds to the same extent and priority as the Petition Date;

3.     Authorizing the Assumption and Assignment of the Assumed Contracts to Buyer conditioned upon the closing of escrow;

4.     Determining that the Buyer is a good faith purchaser of the Debtor's assets such that Buyer will be entitled to the full protections of 11 U.S.C. § 363(m);

5.     Finding that the terms of the sale are fair and reasonable and the Buyer is paying reasonably equivalent value for the purchased assets;

6.     Waiving the provisions of F.R.B.P. 6004(g) under the circumstances of this case; and

7.     For such other and further relief that the Court deems just and appropriate.

Dated: November 13, 2014                         Kornfield, Nyberg, Bendes & Kuhner, P.C.


By:/s/ Eric A. Nyberg
   (Bar No. 131105)
   Proposed Attorneys for Debtor Sirius Information,
   Inc., dba Infocom Group and Bulldog Reporter

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

Motion to Sell All of Its Assets Free and Clear of Liens, Claims, Encumbrances and Interests and Assume and Assign Executory Contracts, and for Related Relief

-17-

Case: 14-44504   Doc# 7   Filed: 11/13/14   Entered: 11/13/14 17:08:32   Page 21 of 21